**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Irvin Alejandro Castillo-Payan, | No. CV-25-00875-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| United States Department of Homeland Security, et al., | |
| Defendants. | |

On September 15, 2025, Defendants United States Department of Homeland Security ("DHS") and Citizenship and Immigration Services ("USCIS") (collectively, "Defendant") filed a Motion for Summary Judgment (Doc. 10). On October 15, 2025, Plaintiff Irvin Alejandro Castillo-Payan ("Plaintiff") filed his Response in Opposition to Defendant's Motion and simultaneously submitted a Cross Motion for Summary Judgment (Doc. 11).[1] Defendant filed its supporting Reply brief with its Response to Plaintiff's Motion for Summary Judgment (Doc. 13). Plaintiff then filed his Reply (Doc. 15).

## I.    Background

On March 14, 2025, Plaintiff brought suit against Defendant under the Freedom of Information Act ("FOIA"), seeking to compel the disclosure of all records relating to Plaintiff's FOIA Request. (*See generally* Doc. 1). Like most claims brought under FOIA, the parties do not dispute the underlying facts.

Plaintiff initially received approval of his Deferred Action for Childhood Arrivals

---

[1] The dispositive motion deadline in this matter was set for September 14, 2026 (Doc. 6), which neither party appears to have complied with.

("DACA") on October 10, 2012, and Plaintiff's DACA status was valid through October 8, 2014. (Doc. 1-2 at 10–11). Four subsequent times, Plaintiff applied for and was granted renewals of his DACA authorization with the final renewal expiring on April 14, 2022. (*See id.* at 13–16). When Plaintiff again attempted to renew his authorization, his DACA renewal application was denied on March 16, 2022. (*Id.* at 27). A further attempt to renew his DACA authorization was denied on October 25, 2022. (*Id.* at 38).

In November of 2023, Plaintiff filed a FOIA request with USCIS (*see id.* at 46–57), seeking the following agency records:

> Any and all records (including, but not limited to, adjudicator notes, conversations, e-mails, memos, internal correspondence, and other related documents) concerning [Plaintiff's] I-821D (Receipt Numbers IOE0917387075 and IOE0914247085) and related I-765 Renewal Applications, which were denied by the Service on or around 03/16/2022 and 10/25/2022.

(*Id.* at 56). Defendant received Plaintiff's request and located his "A-file," "the official record where all immigration transactions involving a particular individual are documented and stored as the individual passes through the immigration and inspection process." (Doc. 10-1 at 3). Defendant then informed Plaintiff that his FOIA request produced "467 responsive pages," and of those pages, 410 pages were released in their entirety and 57 pages were released in part. (*Id.* at 3–4). Defendant asserts that "[c]ertain information was withheld pursuant to FOIA exemption 5 U.S.C. § 552(b)(6) ["Exemption 6"], and (b)(7)(C) ["Exemption 7(C)"] and (b)(7)(E) ["Exemption 7(E)"]." (*Id.* at 4).

On March 13, 2024, Plaintiff filed an administrative appeal, claiming that Defendant failed to disclose responsive records. (*Id.*) On April 4, 2024, USCIS affirmed the initial agency action. (*Id.*) Plaintiff then filed this case, seeking disclosure of responsive records. (*See* Doc. 1). The parties have now cross-moved for summary judgment on this issue, and in support of its Motion, Defendant has filed the relevant "*Vaughn* Index" as well as a declaration by Jarrod Panter, the "Acting Associate Center Director and Chief FOIA Officer in the Freedom of Information and Privacy Act (FOIA/PA) Unit, National Records Center (NRC), United States Citizenship and Immigration Services (USCIS), within the

United States Department of Homeland Security (DHS)[.]" (Doc. 10-1 at 1). (the "Panter Declaration"). (Doc. 10-1).

## II.     FOIA and Summary Judgment

FOIA, codified as 5 U.S.C. § 552, "was enacted to facilitate public access to Government documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quotations omitted). While measured against the government's legitimate reasons to retain certain information, the ultimate goal of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Id.* (quotations omitted).

"FOIA cases are typically decided on motions for summary judgment because the facts are rarely in dispute." *Elec. Frontier Found. v. U.S. Dep't. of J.*, 376 F. Supp. 3d 1023, 1028 (N.D. Cal. 2019). When considering a motion for summary judgment in a FOIA case, a district court analyzes the withholding of documents *de novo*. 5 U.S.C. § 552(a)(4)(B). "The usual summary judgment standard does not extend to FOIA cases because the facts are rarely in dispute and courts generally need not resolve whether there is a genuine issue of material fact." *Shannahan v. I.R.S.*, 637 F. Supp. 2d 902, 912 (W.D. Wash. 2009) (citing *Minier v. Cent. Intel. Agency*, 88 F.3d 796, 800 (9thCir. 1996)). Courts instead apply a two-step inquiry. *Id.*

First, a court "must determine whether the agency has met its burden of proving that it fully discharged its obligations under FOIA," and an agency may demonstrate this by showing that a search reasonably calculated to uncover all relevant documents was conducted. *L.A. Times Commun., LLC v. Dep't. of Army*, 442 F. Supp. 2d 880, 893 (C.D. Cal. 2006).

Second, if the initial burden is met, courts examine "whether the agency has proven that the information that it did not disclose falls within one of the nine FOIA exemptions." *Id.* at 894. In line with FOIA's purpose, "as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't. of State v. Ray*, 502 U.S. 164, 173

(1991). "That burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document." *Id.* To provide a meaningful opportunity to contest and review any withholdings, agencies are "required to supply the opposing party and the court with a '*Vaughn* index,' identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener v. F.B.I.*, 943 F.2d 972, 977 (9th Cir. 1991) (internal citations and quotations omitted).

Should the agency fail to meet its burdens, under FOIA, a district court may "enjoin a defendant agency from withholding agency records or to order a defendant agency to produce any improperly withheld records." *Elec. Frontier Found.*, 376 F. Supp. 3d at 1028.

**III.　Discussion**

From Plaintiff's FOIA request, fifty-seven of the total responsive pages were partially or fully withheld under either Exemption 6, 7(C), or 7(E). (*See* Doc. 10-1 at ¶¶ 11, 16). Defendant claims that it conducted an appropriate search for relevant information and that any withheld information was exempt. (*See generally* Doc. 10). Defendant therefore requests that the Court grant summary judgment on these issues. (*See id.*). Plaintiff conversely asks that the Court deny Defendant's Motion and grant his Motion, declaring the withholdings are lawful or in the alternative ordering a revised *Vaughn* index and declaration. (*See generally* Doc. 11).

Specifically, Plaintiff claims that the *Vaughn* Index fails to describe the withheld information with the requisite level of specificity. (Doc. 11 at 5–7). Further, while Plaintiff does not dispute Defendant's withholdings under Exemption 6 or 7(C), he argues that Defendant's withholdings under Exemption 7(E) are not sufficiently justified in the *Vaughn* Index. (*Id.* at 7–10). Defendant, on the other hand, maintains that it has disclosed all responsive documents and any withheld material was appropriate under the Exemption. (Doc. 10 at 2). Finally, the parties dispute whether the withheld documents were properly segregated. (*See* Doc. 10 at 9; Doc 11 at 9–10).

### A. Adequacy of Defendant's Search

Initially, although Plaintiff claims that Defendant's search was inadequate in his Complaint, Plaintiff offers no argument or other basis for the Court to determine that Defendant's search was not reasonably calculated to uncover all relevant documents. Plaintiff asserts that he disputes that the search was adequate in his "Controverting Statement of Facts." (Doc. 11-1 at 3). Elsewise, Plaintiff fails to address the reasonableness of Defendant's search. (*See generally* Docs. 11, 15). By contrast, the Panter Declaration establishes that Defendant located Plaintiff's "A-file" where all immigration transactions of an individual are stored, and that "[n]o other record system was likely to produce responsive records." (Doc. 10-1 at 3). Based on these uncontroverted claims, it is presumed that Defendant's search complied with its obligations under FOIA, and Defendant's initial burden need not be further discussed.

### B. Sufficiency of the *Vaughn* Index

As mentioned, a *Vaughn* index identifies "the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption." *Lion Raisins v. U.S. Dep't. of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004). An agency must disclose as much information as possible without defeating the purpose of the claimed exemption. *Weiner*, 943 F.3d at 979. "Specificity is the defining requirement of the *Vaughn* index." *Id.* (internal citation and quotation marks omitted). Here, pertaining to Defendant's invocation of Exemption 7(E), Plaintiff challenges the sufficiency of both the withheld information's description and the justification for the withholding.

Exemption 7(E) permits an agency to withhold law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The agency asserting the Exemption "must demonstrate logically how the release of the requested information might create a risk of circumvention of the law."

*Anguiano v. U.S. Immig. and Cust. Enf't*, 356 F. Supp. 3d 917, 924 (N.D. Cal. 2018) (internal quotation marks and citations omitted). Additionally, only investigative techniques that are "not generally known to the public" are exempted under 7(E). *Rosenfeld v. U.S. Dep't. of J.*, 57 F.3d 803, 815 (9th Cir. 1995).

First, the Court finds that Defendant has not provided sufficient detail about the undisclosed records for the Court to determine that these records may be withheld under Exemption 7(E). In the *Vaughn* Index, the information withheld under Exemption 7(E) is described as follows:

- Document titled "Supervisor Review Worksheet" where the information withheld contains vetting and systems used in reviewing the application.

- Document that shows the vetting data that was queried within law enforcement services to assist with adjudicating this application.

- Memoranda and supporting vetting documentation that shows system data and investigatory details about law enforcement system checks conducted on the applicant.

- Document showing the exact data queried within law enforcement services to assist with adjudicating this application.

- Portions of a document titled "DACA Checklist." The information withheld discusses specific law enforcement systems conducted on the applicant.

- The information withheld on this TECS printout contains specific system coding used by adjudicating officers to navigate law enforcement systems when reviewing applicants.

- PCQS Printout showing specific law enforcement systems checked on the applicant.

- ROIQ printout that shows law enforcement activities related to the review of this applicant.

(Doc. 10-1 at 8–16). In support of the redactions, Panter states that "[t]he type of information withheld concerns law enforcement database information, law enforcement techniques considered in evaluating the specific applications of the Plaintiff, and

information that otherwise reveals law enforcement activity." (*Id.* at 6).

"Although Exemption 7(E) sets a low bar for the agency to justify withholding, the agency must at least provide *some* explanation of what procedures are involved and how they would be disclosed." *Citizens for Resp. and Ethics in Wash. v. U.S. Dep't. of J.*, 746 F.3d 1082, 1102 (D.C. Cir. 2014). Defendant's descriptions of the withheld information fail to explain what procedures or techniques are involved. Defendant provides "little insight as to the particular techniques or procedures at issue" and "offers no discussion regarding whether the techniques or procedures at issue are well known." *Shannahan*, 637 F. Supp. 2d. at 922.

Even more so, the descriptions are hard to understand as they, for example, employ vague terms such as "law enforcement systems" and use "vetting" as both a noun and a descriptor. It is further unclear whether the information withheld was specific pieces of data, information about particular databases, or procedures for utilizing any "systems" to which the *Vaughn* Index refers. The lack of clarity in these descriptions hinders meaningful review of the information withheld under Exemption 7(E). Finally, the Panter Declaration identifies three types of information that were withheld (*see* Doc. 10-1 at 6), but these broad categories fail to clarify the specific information withheld from particular documents.

It is quite possible that information may be withhold-able under the Exemption. However, reaching such a conclusion requires Defendant to provide a clear description of the withheld information akin to the description of the information Defendant withheld under Exemption 6. (*See id.* at 11 ("Letters from third parties supporting the applicant. The information redacted is third parties' phone numbers and physical addresses.")).

Second, the *Vaughn* Index and Panter Declaration overall fail to offer "a particularized explanation of why each document falls within the claimed exemption." *Transgender L. Ctr v. Immig. and Cust. Enf't*, 46 F.4th 771, 781 (9th Cir. 2022) (quoting *Lahr*, 569 F.3d at 989).

For each withholding under Exemption 7(E), Defendant provided the same justification:

> Exemption 7(E) is applied to withhold information related to the vetting of systems used when conducting a review for eligibility of immigration benefits. Additionally, the exemption was applied to withhold information and issues flagged for review and the basis and recommendations for action involved in the investigation into plaintiff's immigration applications which are part of the techniques, procedures and guidelines involved in law enforcement and the enforcement of national security laws and directives USCIS is tasked with as an agency of the government. Disclosure would allow an individual to evade detection by screening their submissions or altering their behavior to account for behaviors or issues identified by USCIS as well as recommended actions. This expectation of circumvention of the law is why there is a foreseeable harm in disclosing this information and why it is appropriately exempt pursuant to Exemption 7(E).

(*See* Doc. 10-1 at 8–17). While this justification addresses a risk of circumvention of the law, providing the same by rote explanation for each withholding fails to establish why the disclosure of any particular information risks circumvention of the law or exposing something more than a generally known technique or procedure. *See*, *e.g.*, *Human Rights Def. Ctr. v. U.S. Dep't of J.*, 2023 WL 4131616, at *15 (W.D. Wash. 2023) ("The Court will not accept identical, boilerplate justifications for redacting information throughout the *Vaughn* index."); *Voice of San Diego v. Naval Crim. Investigative Serv.*, 2023 WL 8704727, at *11 (S.D. Cal. 2023) (finding the defendant's *Vaughn* index insufficient in part because its "explanations for the redactions and withholdings in the Vaughn Index are boilerplate and conclusory"); *Am. C.L. Union Found. of Ariz. v. U.S. Dep't of Homeland Sec.*, 2017 WL 8895339, at *27 (D. Ariz. 2017) (determining that the defendant's Vaughn index was insufficient "[b]ecause Defendant improperly grouped together its reasons supporting application of Exemption 7(E) for many documents…without specifically tailoring the particular redactions to a specific explanation").

Moreover, the averments Panter makes in his Declaration does not save the *Vaughn* Index. Defendant asserts that "USCIS withheld portions of documents pursuant to Exemption 7(E) that contain law enforcement information which would disclose techniques and procedures for law enforcement investigations where such disclosure could reasonably be expected to risk circumvention of the law." (Doc. 10-1 at 6). No further

detail or explanation as to any specific withholding is provided, and therefore Defendant has made "no showing how or why redacted information…reveals an unknown technique or procedure that would support redaction under Exemption 7(E)." *Am. C.L. Union Found. of Ariz.*, 2017 WL 8895339, at *27.

Third, given the opaque descriptions and generalized justifications, the Court is not satisfied that any disclosure here could risk circumvention of the law. Panter asserts that "[d]isclosure would allow an individual to evade detection by screening their submissions or altering their behavior to account for behaviors or issues identified by USCIS as well as recommended actions," and therefore the information is exempt under 7(E) due to this potential circumvention of the law. (Doc. 10-1 at 8–17). Yet, Defendant has not established that the criteria for DACA renewal is unknown, nor are the things that could lead to the denial of a DACA renewal. In addition, it is not clear how giving Plaintiff access to his own review data after his renewal has already been denied would allow him to evade detection or alter his behavior. *See Am. C.L. Union v. U.S. Dept. of Homeland Sec.*, 973 F. Supp. 2d 306, 319 (S.D.N.Y. 2013) ("[T]he Government fails to explain at all how a detainee, given access to his or her own [review] data, after the fact and living in a detention center, could tailor any relevant type of conduct or alter any relevant type of information to accomplish this.") (internal quotations omitted). Ironically, USCIS has not been processing new DACA applications, which presumably mitigates opportunities for circumventing the law. *See Dziadosz v. Garland*, 2026 WL 884907, at *6 n.6 (D.N.J. 2026) ("[T]he *Texas* Litigation effectively halted the processing of new DACA applications for over three years.").

For the foregoing reasons, the Court finds that Defendant's *Vaughn* Index was insufficient. The Court is without adequate evidence that any records were properly withheld under Exemption 7(E) and therefore denies Defendant's request for summary judgment on this issue and will grant Plaintiff's countervailing request in part. "In general, where questions exist as to the adequacy of the government's search, *Vaughn* index, or invocation of an exemption (including issues of segregability), courts may request a

supplemental declaration, a revised *Vaughn* index, or an in camera review of the document." *Am. C.L. Union Found. of Ariz.*, 2017 WL 8895339, at \*29.

### C.    Segregability

Plaintiff also takes exception to Defendant's withholding of "entire documents based on both Exemption 7(C) and Exemption 7(E)," arguing that Defendant must disclose non-exempt portions of the record. (Doc. 11 at 10). Panter states that "no further segregation of meaningful information in the withheld documents described herein would be possible without disclosing information that warrants protection under the law. The only information withheld from the Plaintiffs is information that is entitled to protection from disclosure that would cause a foreseeable harm to any agency operations if released." (Doc. 10-1 at 7).

FOIA provides that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed. *P. Fisheries, Inc. v. U.S.*, 539 F.3d 1143, 1148 (9th Cir. 2008). Here, although he references both Exemptions 7(C) and (E), Plaintiff only argues, rather succinctly, that documents "are being impermissibly withheld in their entirety under Exemption 7(C)." (Doc. 11 at 10). The Court notes that every invocation of Exemption 7(C) in the *Vaughn* Index was accompanied by an assertion of Exemption 7(E). (*See* Doc. 10-1 at 8–17). So, it is not clear that any document was withheld in its entirety under Exemption 7(C).

At the same time, the *Vaughn* Index merely states, at the end of each justification, that "[a]ll other information on these pages was segregated and released." (*See id.*). And the Panter Declaration sheds no further light on this issue as it only states generally that no further segregation of information is possible. (*See id.* 10-1 at 7). *See Am. C.L. Union of N. Cali. v. F.B.I.*, 2014 WL 4629110, at \*9 (N.D. Cal. 2014) ("A blanket statement that the documents are not segregable or that all reasonably segregable information has been release is insufficient to satisfy the government's burden."). "The *Vaughn* index provided

by the agency should 'specify in detail which portions of the document are disclosable and which are allegedly exempt.' " *Wilderness Soc. v. U.S. Dep't. of Int.*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973)); *see also Sea Shepherd Legal v. Nat'l Oceanic and Atmospheric Admin.*, 516 F.Supp.3d 1217, 1242 (W.D. Wash. 2021) (determining that the government met its burden as to segregability where the "declaration describes the withheld documents individually and provides detailed explanations for each withholding").

While Plaintiff's argument on this topic is cursory, it is Defendant's burden to establish that all reasonably segregable portions of a document have been segregated and disclosed. On the current record, given the lack of clarity and specificity in the *Vaughn* Index and Panter Declaration, the Court cannot find that Defendant has met its burden.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 10) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Cross Motion for Summary Judgment (Doc. 11) is **GRANTED IN PART** and **DENIED IN PART** without prejudice. The Court will not order the production of any further documents at this time but will order that a revised *Vaughn* index and declaration be produced.

**IT IS FINALLY ORDERED** that Defendant shall submit an amended *Vaughn* index, remediating the issues described herein, **within thirty (30) days of this Order**.

Dated this 29th day of July, 2026.

Honorable Diane J. Humetewa
United States District Judge

- 11 -